UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                                :
UNITED STATES OF AMERICA,        :    CASE NO. 1:06-CR-345
                                                :
          Plaintiff,                        :
                                                :
vs.                                           :    OPINION & ORDER
                                                :    [Resolving Doc. No. 52]
JOSEPH MIHALICH, AVERY KLEIN,   :
RICHARD OTTERMAN, PHILLIP F.    :
GEORGE, JR.,                              :
                                                :
          Defendants.                    :
                                                :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Order, the Court decides whether to grant Defendant Richard Otterman's ("Otterman") motion to suppress as evidence that the Akron Police Department seized $3,500 search of the Barber Road Instant Bingo. The Akron police seized the money during the exercise of a search warrant for the premises. Otterman faces charges of illegal gambling and he seeks to stop the introduction of evidence concerning this cash during his trial. [Doc. 52.] The Government opposes Otterman's motion. [Doc. 71.] For the reasons presented below, the Court **DENIES** Otterman's motion.

I. Background

At approximately 9:00 a.m. on December 20, 2002, Officers from the Akron Police Department executed a search warrant upon Barber Road Instant Bingo, an allegedly illegal gambling operation under investigation by the Government. [Docs. 52, 71; Hearing Tr. at 11, 14.] Magistrate Judge James Gallas issued the search warrant that authorized the police to seize, *inter alia*, gambling machines and "United States currency in excess of $1,000." [Doc. 52-2; Hearing Tr. at 10.] The warrant did not authorize the search of any persons. [Hearing Tr. at 18.] The warrant

-1-

Case No. 1:06-CR-345
Gwin, J.

team consisted of several members if Akron's police department, including Sargent Jerald Forney. *Id.* at 5-7.

Prior to executing the search warrant, the Government's investigation team briefed the police on the nature of the gambling activities at Barber Road Instant Bingo. *Id.* at 7-11. The investigators instructed the officers that the store contained gambling machines that dispensed prize tickets redeemable from "[s]omebody that worked at the store." *Id.* at 10. The investigators also told the officers that the store was a "cash business." *Id.* at 9. The officers understood that, as a cash business, there could be guns or weapons in the store. *Id.* at 25-26.

At the time the search was executed, only Otterman and one other person were in Barber Road Instant Bingo. [Doc. 71; Hearing Tr. at 24.] Upon entering the premises, Sargent Forney spoke to Otterman, informing him of the purpose of the search. [Hearing Tr. at 12.] In response, Defendant Otterman told Forney that he was "watching the store for a friend, that he was, in fact, in charge of the store." *Id.* at 13, 27. Sargent Forney then asked Otterman if he had any weapons; Otterman replied that he did not. [Doc. 71.] Forney asked Otterman if he "could have a search of his person" and Otterman consented. [Hearing Tr. at 12.] During the pat-down, Forney detected a $3,500 "bundle of cash" in one of Otterman's pockets. *Id.* Upon Forney's questioning, Defendant Otterman told Forney that the $3,500 was "for Christmas gifts." *Id.* at 16-17. Believing the money to be contraband, Sargent Forney confiscated it and gave Otterman a receipt for $3,500. [Docs. 52, 71; Hearing Tr. at 17.]

The Government subsequently charged Otterman with engaging in illegal gambling activities in violation of Section 1955 of Title 18 of the United States Code. [Doc. 1.] Otterman moved to suppress the $3,500 as evidence against him. [Doc. 52.] The Government opposed Otterman's

Case No. 1:06-CR-345
Gwin, J.

motion. [Doc. 71.]

On October 6, 2006, the Court conducted a suppression hearing on the subject of the admissibility of the $3,500 as evidence in the Government's case against Otterman. [Hearing Tr. 1-49.] Sargent Forney was the Government's only witness and the defense cross-examined him. *Id.* at 4-33. The defense did not call any witnesses. *Id.* at 33.

## II. Legal Standard

The Fourth Amendment guarantees the fundamental right to be free from unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

An individual may waive his Fourth Amendment rights through, *inter alia*, consent to the search of his person or premises. *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). The prosecution bears the burden of proving the voluntariness of the consent. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). Court must determine, based on the totality of the circumstances, whether an individual's consent was voluntary or coerced. *Schneckloth*, 412 U.S. at 231-33. Consent is coerced when an officer asserts his official status to which a citizen yields, rather than making his own determination to submit to the officer's request. *See, e.g.*, *Bumper*, 391 U.S. at 550.

As described, a police officer may search without a warrant or probable cause if he receives the subject's voluntary consent. *Schneckloth*, 412 U.S. at 219 (citation omitted). The officer may

Case No. 1:06-CR-345
Gwin, J.

confiscate property during a consensual search when he reasonably suspects that the property constitutes evidence of criminal activity. *United States v. Place*, 462 U.S. 696, 706 (1983). Reasonable suspicion of criminal activity is defined as "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). If, during a consent search, the officer discovers items that may be contraband, he "clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). The officer may seize such an item when he has probable cause to believe that he has found contraband or evidence of a crime. *See, e.g.*, *Florida v. White*, 526 U.S. 559 (1999); *Illinois v. Gates*, 462 U.S. 213 (1985).

### III. Analysis

Otterman says that, because he was not named in the search warrant, the police impermissibly searched him when they executed the warrant at the Barber Road Instant Bingo. Otterman also says that the police wrongly confiscated the $3,500 from his person. He claims that the police violated his Fourth Amendment right to be free from unreasonable search and seizure. Otterman asks the Court to suppress the $3,500 seized from him as evidence in this case.

The Court declines to do so.

Sargent Forney performed a permissible search of Otterman's person after Otterman gave his consent to the search. At the suppression hearing, Forney testified that he asked Otterman if he "could have a search of his person." Otterman agreed to the search. The record does not show that Sargent Forney coerced Otterman's agreement. The defense does assert impermissible police coercion in its pleadings and did not advance the theory in the suppression hearing. Instead, the

Case No. 1:06-CR-345
Gwin, J.

pleadings and testimony indicate that Otterman voluntarily submitted to Forney's search. Thus, Forney conducted a voluntary consent search of Otterman.

Second, while he was searching Otterman, Forney found $3,500 in one of Otterman's pockets. Forney reasonably seized the money because he had probable cause to believe that it was evidence of illegal gambling activity. Prior to executing the search warrant, the Government's investigators briefed the police on Barber Road Instant Bingo's gambling activities. From this briefing, Forney knew that he would be searching a "cash business." He knew that the store's operation required "prize" winners to redeem tickets from the on-site manager to obtain payment. At the time of the search, Otterman identified himself to Forney as the person "in charge of the store." Attempting to explain his possession of $3,500 at a gambling store at 9:00 a.m., Otterman said he possessed the money "for Christmas gifts." Sargent Forney reasonably could discredit this explanation and believe that the money was evidence of criminal activity.

Thus, because Otterman consented to Forney's search and considering the totality of the circumstances surrounding Otterman's possession of the $3,500, the Court concludes that the police acted with probable cause in seizing the money from Otterman. Consequently, the Court will not suppress as evidence the $3,500 seized from Otterman in this case.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Otterman's motion.

IT IS SO ORDERED.

Dated: October 23, 2006   s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE